5127 Councilman against the Department of Health and Human Services, but before counsel in the next case come forward please give the departing counsel an opportunity to get their things together. Ms. Powell, are you ready? May it please the court, I'm Lindsay Powell for the government. With the court's permission I would like to reserve five minutes for rebuttal. Very well. This case presents the question whether compensation under the Vaccine Act must take into account a petitioner's eligibility for Social Security Disability Insurance benefits. It is undisputed in this case that the petitioner is eligible to receive over $20,000 per year in SSDI payments. A petitioner's eligibility for such benefits is directly relevant in calculating the extent of her actual and anticipated loss of earnings under Section 15A of the Vaccine Act. We're very familiar with the arguments and the facts and so forth, so let's get right to the core issues. And let me turn your attention first to Section G. Assume now with me for a moment that we reject the argument that SSDI is a, what's the language, health benefits program. Do you believe that wages are included within the reference in Section G to any item or service? Yes, Your Honor. I do believe that the item or service language is broad enough to include the benefits at issue here. Item is, as used in context, is clearly a broad term that does not refer to the foregoing item in Section 15. Well, if that's true, don't you run into a problem with Section G? And that is this, that Section G says payment of compensation shall not be made for any item or service to the extent that payment has been made or can reasonably be expected to be made for such item or service under any state compensation program. Now that leaves out, and I think it conspicuously leaves out federal compensation program because the words federal and state appear in the very next line of the statute with respect to the health benefits. Why doesn't, if you take the position that item and service includes wages, why doesn't that omission of the word federal make a real problem for your case? Well, Your Honor, I believe item or service modifies the subsequent clauses of G1 so that it also applies to health benefits program and insurance policy there. So I think it is necessary that item or service be broad enough to include what's at issue. But I think the fact that state compensation program does clearly include... Well, but it says, under a state compensation program, comma, under an insurance policy, comma, or under any federal or state health benefits program. Those seem like three discrete categories. Yes, Your Honor. I think perhaps I was focusing over much on your reference to item or service rather on the three categories you just named. But with respect to the latter, I believe each of these is a broad category and that the statute is accommodating of overlap among them. G itself is a broad catch-all provision located toward the end of 15, and it's clear that it's intended to accommodate Congress's purpose of ensuring that petitioners do not receive multiple recovery for single items of losses. At least with respect to state compensation programs. Right, and state. But there's no reference to federal. I mean, you understand my concern with the omission of the word federal in that context. Yes, Your Honor. But what I was trying to express is that I think state compensation programs, that each of these terms, rather, is broad enough that they can accommodate some overlap. So the state and federal health benefits program may also be broad enough to accommodate, for instance, a workers' compensation program, that that can be categorized in that category as well as the state compensation program. So that all goes to, you're just making the argument to us why this comes under a federal health benefit program? Is that your response? Yes, Your Honor. I was trying to take that off the table. Yeah, that's what I understood. I'm sorry, then I think I don't understand the question. Well, the question is, if we take the health benefit programs, which is the third in the three categories. Okay, I'm sorry, I had missed that. I'm sorry, I didn't make it clear. I do believe that is the only category that federal social security disability benefits would fall into. If you say that that's off the table, then you're left with two arguments, it seems to me. One is that section A3A is what governs wages, and G has nothing to do with wages, and therefore anything that's an offset, potential offset to the amount of wages that reflects, that reduces the amount of the potential payment from the program is fair game. That's argument number one. The second argument is that, well, wages are included within items of service. But if you make the second argument, and that's what I was trying to explore with you, you do run in, I think, to the problem of the limitation of that language to state compensation program, the set-off provision. Your Honor, I believe that that's correct, but I, of course, reject the premise that health benefits program is not broad enough to include it. So you're saying health benefits programs include state workers' compensation? I believe that there may be some circumstances in which that term would be broad enough. That's not essential to deciding this case. Why did they separate out the two, then? I believe Congress's intent in subsection G was to create this broad catch-all category to make clear that the title of that provision is program not primarily liable. Its intent is to establish... If that were true, that goes back to Judge Bryson's point, I think, very fairly, that if they hadn't had state compensation programs, that language, in there, then, okay, you're making the argument that state and federal health benefits programs cover it all. I can see that. But they said federal or state health benefits programs, and then they said state compensation programs. How do we explain the omission of federal compensation programs? That's a fair reading, right? That federal... The way you read G is that federal compensation programs are not covered in this exception? Well, certain federal compensation programs, of course, would be covered. Those that fall into that third category of federal health benefits program, which we believe is broad... Sure. But setting aside the category aside? Yes, Your Honor. Of course, this would be a much easier case for us if it said state and federal compensation program rather than just state. I do believe, however, it's not necessary to even reach the question of whether subsection G can accommodate the SSDI benefits at issue here, because subsection A3A does speak clearly on that point. The text of the statute... Well, the problem... I'm sorry. If A3A was supposed to cover anything that would replace earnings, then why is state compensation program mentioned in G? That would be completely unnecessary, correct? Well, Your Honor, I think it would be wrong to suggest that reading the provisions the way that we have proposed would create some sort of superfluity. Both provisions are quite broad, and again, the intent of Congress here was to create a scheme that would make petitioners whole, but without providing multiple compensation for single items of losses, that there may be some overlap between the two provisions is not an impediment to the readings that we propose. Since you... I'm sorry. Did you have a question? Since you had turned to A3A, I want to ask you a question about that. I take it your argument under A3A, correct me if this is not a fair characterization, is that the whole underlying notion of A3A is there ought not to be double compensation or overcompensation. Somebody, when you ask the question of what one's actual, what is the language, actual loss of earnings, actual or anticipated loss of earnings, when you ask that question, what you want to know is, with respect to resources directed at replacing lost earnings, how much is left over that has to be taken up by the compensation program. That's your position, isn't it? That is correct, Your Honor. Now suppose, given that question, suppose that Ms. Heintzelman had a rich uncle who discovered her condition and said, gosh, she's not going to be able to work again. I want to make sure that she is taken care of. I'm going to replace her salary and made a gift to her of the exact amount of her lost salary. Would that mean that the program would not have to pay her anything? No, Your Honor. And I think that example is readily distinguishable. With SSDI, you have a program for which eligibility is established by work history. A petitioner has been paying into it. Sure, sure, we understand all that. But listen, I really am interested in knowing why that, if your theory is that the underlying theory of A, A3A, is that we don't want anybody to be getting funds above and beyond that which they've already gotten from some other source to replace their income. Why the rich uncle is not a set-off? I think among the distinctions between the example in this case and the one Your Honor is positing is the source of the income. I mean, private sources of income are, as a matter of common sense, I think, distinguishable from other federal sources. Suppose it's a state program. The state has an income, it's a generous state, it has an income replacement. Would that be set-off? Yes, Your Honor, I think that would be. Why the difference between the rich uncle and the well-heeled state? Again, I think the formality of the government program is relevant in part because the formality helps to establish the directness of the link between the employment, the intervening injury, and the substitution of events. But it seems to me you've given up, if you start drawing lines like that, you've given up the relatively high ground, so to speak, at least the principle that there will not be overcompensation. You're saying there will not be overcompensation as long as that overcompensation comes from some governmental entity. That's your position? It is, Your Honor. I think it is entirely appropriate to take into account the difference between governmental and private sources of compensation. Well, it might be if I were writing a statute, but I'm trying to interpret one, and all I have to go on is one word, really, the word actual. And I'm having a hard time seeing why the word actual means something different when the rich uncle has made sure that there will be no net loss versus the state has made sure there will be no net loss. Your Honor, I do believe that reading A3A in context of the statute more broadly is instructive here, reference to G in particular, where the offset provisions are... But you can't read the two together. I mean, they're two different provisions. And yes, you read them as a collective concept, but in that way, it actually cuts against your argument because what's the point of G if every governmental payment comes out of it? Well, it wouldn't be every governmental payment, just those that specifically replace a petitioner's lost earnings. But in the event that Your Honor is concerned about excluding private sources, certainly it would be more appropriate to read the statute to include public and private than to allow the type of double recovery that petitioner proposes. In this case, that is expressly not what Congress intended through this scheme, and the sovereign immunity canon is also... Before you get to sovereign immunity, can I just go back? I'm more rather than less confused by some of your answers. I can conceptually understand a broad reading of A, compensation for actual or anticipated loss of earnings, and that would cover SSDI. That's compensatory. But so is workman's comp, or at least a portion of workman's comp. Why would Congress have had to include in G state compensation programs if indeed we agree under your reading of what A covers? Isn't that completely superfluous because state compensation programs, under your view, is automatically covered by A? Your Honor, there is the possibility, as you suggest,  but that does not create a problem of superfluousness, precisely because each provision also covers independent ground. So it's not as though the provision for workers' compensation in G means that A3A is doing no work. And as long as that's true, Congress could reasonably have... Yes, but the problem you have is that they picked state and not federal in G. And whereas in the exact same sentence, when they're talking about health benefit programs, again, let's assume we're not following the government's position on health benefit programs, that they chose federal and state. It's pretty hard to get beyond that construction, is it not? Your Honor, that is one difficulty with the reading in G. Again, I do think health benefit program is broad enough to encompass SSDI. It is made contingent on a medical event. It relates to Medicare eligibility. There are various reasons stated in our brief why it is a health benefit program. Well, it seems to me the Medicare eligibility almost cuts against you because it demonstrates that there are two separate programs, the compensation aspect and otherwise. Your read, government reads workman's comp that was coming under state compensation program in G? It has been understood that way, but it does also come under A3A. And again, that is not an impediment to the construction that we've proposed. Turning briefly to the sovereign immunity canon, to the extent the court finds either of these provisions ambiguous, it is clear that the ambiguity should be construed in favor. Well, let me ask you about that sovereign immunity issue. I mean, your friend raised the concept at that court, the question of how can sovereign immunity apply in these circumstances where you have a special trust fund from which these funds all have to be paid and that there's no risk to the public good. And your only response is, well, yeah, it's a trust fund, but it's also stored at Treasury. How does the fact that it's stored at Treasury create a risk to the public fund? Well, it still is in a literal sense, you know, funds collected through a tax that are located and paid from the U.S. Treasury, but it's also clear from this court's opinion, most recently, I believe, Clore, that the sovereign immunity canon does apply in the vaccine act context. We've said it can and does apply to issues of the statute of limitations, but that doesn't necessarily mean that it would apply to these kinds of payment decisions because there is no risk to the public fit. Well, the risk is the same, though, I think. It goes to the – I think Clore answers the threshold question. If there were no risk to the public fit, the canon would not apply in the vaccine act context at all because all payments are being made from that source. But this court has established that the canon does apply, and it applies not only to the threshold question whether there has been a waiver, but with respect to any questions as to the scope of that waiver, and that's precisely the type of question presented here. Let me ask you a question going to the argument you made just before turning to sovereign immunity that the health benefits issue, and you say SSDI is a health benefits program. But my understanding was – I mean, suppose, take an example, that I'm a concert violinist and I lose a hand in an accident. I have a disability that prevents me from doing my work, but, I mean, after I leave the hospital, I may never see a doctor again. I may be fine. I mean, I'm missing a hand. I'm not whole, but I'm not sick. I have no medical bills. But I keep getting SSDI payments. So why is SSDI not – I guess it has some incidental relationship, perhaps. I mean, most people who are disabled have medical problems, obviously. But why is it a health benefits program? It sounds like it's addressing a very different issue. Well, I think had Congress meant to limit that term to health insurance program, it would have said so. Insurance does appear in the immediately preceding clause of the section. Yeah, but there's some health benefits programs that are not in the form of insurance. Veterans, for example. Veterans get health benefits not because of their paid premiums, but because they're veterans and they get all sorts of health benefits. I would assume that payments made from the DVA to a veteran would fall – for health-related reasons, would fall within that broad definition, even though it wouldn't be insurance premium. They may, Your Honor, but it is still meaningful that the term is health benefits program. I think the veterans program could arguably fall under an insurance rubric as well. But the broader term is what appears in the statute, and I think that SSDI depends on a triggering medical event. So these are people who have been able to work previously, and intervening medical event changes the situation, and they then become eligible for these benefits. It does establish a sufficient relationship to the health condition. And again, I think the Medicare eligibility is related to that. Although it is a different health benefits program, it shows the close relationship to health rather than any distance between them. Let me ask just one further question, and it's a takeoff on the rich uncle. Let's assume I've just got an AB – the American Viral Association offers all kinds of insurance programs, and there's a policy for disability. And so I'm collecting $20,000 under that policy for disability. Is it the government's view that that comes in? And if so, is that an A issue, or is that under the reference to insurance policy in G? Your Honor, so it certainly would. The insurance policy in G would accommodate that. An argument could also be made, acknowledging that it may require a slight revision of my prior response with respect to private funds. An argument could be made that that should also be taken into account under A3A. There is a greater formality there that you see with the state and federal benefits program relating to the triggering event that you don't have with the gift from the uncle, the shifting of personal resources of that kind. Well, but if this degree of formality is important, suppose that the rich uncle happens to own the company for which Ms. Heinzelman works, and suppose that company has a policy that if you get injured from a variety of things, we are very generous and we'll pay your salary for life, or we'll pay an amount of money that will cover your salary for life. Would that be included within A? However we're construing A, I do think that example, it clearly goes with the private insurance policy example and not the gift from the uncle. It does fall within the established rubric, the established policy with the formal triggering event. And if it wasn't an established policy, but it was established for the first time in Ms. Heinzelman's case, because it's the first time anybody's ever had a devastating injury on the job, and the employer said, Stacy Heinzelman, you are going to be our first recipient of the wage replacement gift. Your Honor, that is of course a difficult question. I think it would depend on the specifics of how the policy were established. If the company at that point adopted a policy, I believe it would fall into the category of an insurance policy, and if it was more like a gift than a gift. The government's not taking the position that SSDI, they're not saying that that comes under the rubric of an insurance policy under G, right? No, Your Honor. Okay, thank you. We'll hear from Mr. Gage. Mr. Gage, I neglected to ask Ms. Powell, but we'll ask her on rebuttal about your motion, which you have pending, and I guess, actually, since it's your motion, maybe this is the right... I was hoping, Your Honor, that we would find a little time to talk about it. That's fine. So you can address it at the end of your remarks, or now, at any chance. And if you need a little extra time, we ran over with Ms. Powell. We'll give you some extra time. Okay. May it please the Court, Richard Gage for Petitioner Appelli. I know it is no surprise to the Court, it is our position that if Congress had wanted to take what I think would be a very drastic, probably controversial move to require people to surrender the value of their Social Security accounts to the vaccine program if they were to apply, that they would have said that directly. They did not. So we are here, and it is my intention to talk about what the intent of Congress is, because that is the approach. The plain language does not support the government's argument. We have to deal with intent. As a procedural matter, the first thing I'd like to start with, Your Honors, is if Congress intended to take this detour through the Social Security Administration, where do we find evidence of that in the statute? Subsection 12 establishes what Congress thought was going to be the procedure for dealing with these petitions. And specifically, Subsection 12D3A expressly, Congress expressly instructed the Special Masters that they would have the work done in their court within 240 days. Now, as we all know, that doesn't happen, but we're looking at the intent, what the thought of Congress was back then. There's nothing in there that says, and this 240 days that we anticipate these petitions to be done by can be suspended while you detour through the Social Security Administration. It doesn't say that Special Masters have the authority to order the Social Security Administration to render a ruling within any particular period of time. And actually, getting through the Social Security Administration, which I am not an expert on, Your Honors. Well, I'm not even sure why any of this is relevant, because 15G refers to a payment that has been made or can reasonably be expected to be made, and here everybody agrees that you can reasonably expect that she will receive Social Security benefits. Yes, there's been a delay here because of the debate over this issue, but there is no requirement that you have to go and get the benefits first. Oh, but you don't know if you're going to get the benefit until you go to the Social Security Administration. But in this case, you've stipulated that she was reasonably expected to receive them. I understand that, but we're talking about what the intent of Congress was. What were they thinking at the time when they passed the law? And they clearly, to apply within the Social Security Administration and then get your petition done within 240 days is not possible. So, I guess I'm not following it either, but let's assume that we're dealing with instances. We're construing the statute in the context of instances where a person is receiving Social Security benefits under SSDI. So let's stipulate that. If you change the scenario to they went to the Social Security Administration first, went through whatever appeal process... Let's change the scenario to just say we have a question of whether when this person is getting compensated under the Vaccine Act for all of her lost wages, post-tax net lost wages, and she is also receiving an additional amount for SSDI to compensate her for lost earnings. Is that what's contemplated under A? That's the issue before us. Clearly, a petitioner agrees with the court below that it does not actually mean past and anticipated means future. However, I need to finish that thought. You don't know how much you're going to get in the Social Security Administration until you apply. So the idea, I take it, your argument is that at the end of this 240 days that Congress envisioned, there was going to be a number that was going to be on what ultimately became the judgment, and that number was not going to be suspended pending some determination made by an administrative judge in the Social Security system. Correct. And on top of that, Social Security Administration has ongoing jurisdiction. They can come back and revisit somebody's award. I guess I'm still... Didn't you stipulate below that she was reasonably expected to receive Social Security disability? Absolutely. Both the Special Master and the Court of Federal Claims said that you agreed to that. Absolutely. That puts you right within the statute, right? Reasonably expected to receive it. I don't understand what you mean by right within the statute, Your Honor. 15G says that the offset is for any payment that has been made or can reasonably expected to be made. Reasonably expected to be made. So, why isn't this issue right right now without having to go to SSI? I mean, you could have argued that you don't know if she was going to get it, but you didn't argue that. No, and I'm not going to argue that today. All I'm saying is, if Congress were trying to decipher what Congress's intent was, and they did not anticipate this detour through Social Security, they didn't anticipate having to go back and recalculate what Social Security was going to pay, which the Social Security Administration has the ability to do. All I'm saying is... Well, you agree under G, workers' comp includes... I've forgotten the part about... But that would include wages under the program, right? Absolutely. All right. Well, that's just procedurally looking at what Congress... I'm trying to decipher what Congress was trying to set up. Is there any position in your point that Congress was contemplating... It seems to me the argument is, with respect to this provision, it was to compensate her for lost wages. There was no other interest in giving her more money or providing services for anything else. It was strictly and solely, this amount is to compensate for lost earnings. What is there that would lead us to believe that Congress contemplated that she could get 130% of her lost earnings as opposed to just 100% from federal benefit programs? Well, ending the sentence with federal benefit programs is, of course... Okay, from anywhere. Yeah, okay. All right. Because all Congress said was calculate her wages, past and future lost wages, and pay those. Well, they say compensation for actual and anticipated loss of earnings. That's all the only benefit. There might be other provisions where she gets $250,000 for compensatory damages and so forth, but this provision exclusively deals with compensating for actual losses. Is that correct? This specifically provides for actual past and future lost wages because of her vaccine injury. Absolutely, and that's all it does. And if we were to agree with you at the end of the day, she would be receiving 130% of her lost wages, correct? No. If you combine what she would be getting under this plus the SSDI benefits, which are another $20,000, why isn't that more? Don't the combination of those two numbers come out to more than her actual lost earnings? Absolutely. So how do you justify that with the language of the statute? Because the statute doesn't deal with her social security account. It doesn't mention her social security account at all. It doesn't say she has to surrender the value of that to this program. It doesn't mention it. It doesn't even imply it. But she is paid that money as a means of compensating her for lost earnings. In other words, that comes into the calculation, does it not, when we are determining what the sum of her lost earnings were. It doesn't come into the calculation in this statute. I mean, Congress didn't say to do that. Well, wasn't Congress under aid just looking to compensate her 100% or whatever, at least the net after taxes, for what she was earning before and she's not earning now as a result of her injury. Well, they were, they compensate her for her lost wages, past and future. That's what it's for. Right. Absolutely. As a result of her injury. Right. And if we would agree with you, her compensation as a result of her lost injuries under these two programs would consist of about 130% of what were otherwise her previous earnings. She will, as long as the Social Security Administration keeps paying and pays at whatever level they decide to at the time, she's going to get that money also. Absolutely. And it's her money and it's her property. Is it relevant that the Social Security payout calculations are based on the amount of money that she has paid in over her working life? I think it's very relevant. Absolutely. And, you know, this windfall argument the government has made, which is what you're really, I think, addressing here, Your Honor, I disagree with completely. It seems to me that, I mean, first off, our job is to apply the statute. I mean, getting into these broad policy arguments really doesn't help. We need to apply the statute. That's what was done below. I mean, that's the easiest, simplest answer for me, obviously. But if somebody was on welfare for 20 years instead of working for 20 years, they didn't have eligible quarters, enough eligible quarters in the Social Security Administration to be eligible, then they, in fact, get more from the vaccine program because Ms. Heinzelman, because she was industrious and worked and had this protection that she built in with her deductions into her account as the Social Security Administration. Let me ask you, if you've been on welfare, then what would you get under A for compensation for actual and anticipated loss of earnings? If you're an adult, you know, that's an interesting question. If you're a child, we know what you get. Yeah, absolutely. But if you're an adult, I don't know. I've never had a case of that. It'd be an interesting argument to make. But a person, I mean, and you can, as a matter of fact, I have had cases where people were 18, 19, 20 and have no significant work history. They just, you know, they were going to college or, you know, they were planning on being this or that. And, I mean, you have actual, which is just the past, but that anticipated, that's always a tough game to play there. I mean, we bring an economist, we have parents testify, you know, that's always a bit dicey in and of itself. A special master is required to say, okay, future anticipated earnings is going to be thus and so. In that situation, if a person hadn't paid in enough quarters, they weren't old enough. Ms. Heinsman was about 30 when her injury occurred. She had enough eligible quarters. She's got to turn that money back in. You just can't read that into the statute. The other issue, however, the government raised the... Well, you say, I mean, and you've kind of alluded to here and you do say in your brief as well, you characterize it as she's having to turn over the value of her social security account. This isn't a 401k, right? I mean, there's no value of her account. It's a social security program that everybody pays into. It doesn't diminish her ultimate social security benefits that she might be entitled to anywhere else, right? Well, it takes away, it diminishes all of her social security benefits until now, until age 62 that she's paid into. She pays that money in as... But everyone pays that money in, whether or not they get disabled or not. Absolutely. So if nothing had happened to her, she would have never seen that money again just like the rest of us up here. Absolutely. It's a separate program and she paid into it and she became eligible for it and her employers paid into it. And that's a protection that she's paid into and she's become eligible for. Same with workers' comp as well, right? Yeah, although... Yeah, I mean, I understand. The employee doesn't pay into those, but yes, and that's specifically covered through the statute. What do you understand, turning to G, since we've mentioned it, what do you understand to be within the scope of the terms item or service in G? And let me just give you two possible ways to view that. Either it's very broad and includes any kind of benefit or it's limited to things like, for lack of a better example, wheelchairs or physical therapy, i.e. medical type services or items, physical items that are providable to the individual. And where I'm going with this, of course, is does that include wages? It doesn't look like it would include, excuse me, Your Honor, wages to me. Item or service, to the extent that payment has been made or can reasonably be expected to be, and then it goes down through the list and the specific exclusions that come out in G, I mean, it looks to me like it would not include wages to me, Your Honor. Can I ask one question about his motion before he sits down? No, I wanted to turn to that issue, so this is a good time to start. You have the motion that's pending and you're asking that because you assume that regardless of what happens here there might be another appeal and she's been waiting all this time for money and you're asking for at least a portion, as you call it, the undisputed portion of her money. The government makes a good point that their concern is that you can't, you know, say I want the money but then still reserve the right to ultimately disavow some portion of the judgment and then you could go to court and sue. Is Hinesman prepared to stipulate that she will accept the judgment subject to whatever determination is made as it relates to this offset? Well, in this case, Your Honor, absolutely, but she's already filed her election. She filed her Rule 21, I mean, Subsection 21 election. She's already done it. It was done last year. But it was an election that continued to dispute this issue and so I guess it's a question, my question is is she prepared to make clear that her election includes a waiver of any right to go to state court if, in fact, this issue is not resolved in her favor? Your Honor, absolutely. However, I disagree. The government's characterization that you can file a Subsection 21 election and then go into state or federal court is astonishing to me. You absolutely cannot. So you would say that you believe that she's absolutely barred from doing that and that you would represent to us that she has no intention of doing it? Oh, absolutely, Your Honor. But, absolutely, without any reservation at all. However, accepting funds from the vaccine program is an election of remedies. I mean, I can't even imagine my federal district court judge in Wyoming going, you filed an election of your remedies in the vaccine program, you accepted the dollars, and now you think you can come and sue civilly? I mean, that's what Subsection 21 is for. It's what it does. Mechanically, we're talking about real people with real-life circumstances and it seems a little strange to start talking about things like mandates and dividing judgments and so forth, but mechanically, what would you envision as to the way, if we were to grant your motion, we should do it? And here's what I see as a potential problem. Again, it's in court procedure type problem, but if we were to want to direct the payment of some of this money, presumably we would have to remand the case to the Court of Federal Claims. If we remand the case to the Court of Federal Claims, we lose jurisdiction over this appeal, at least for the time being. So, what do you suggest as a way to proceed that has the result of giving you access to the funds that you want, that are undisputed, that you want access to, without putting us in a position that we are forced to do something that deprives us of jurisdiction to resolve the appeal that the government has pending before us? Your Honor, I don't think, the question came up in AVERA most recently, and there was the earlier case AVERA relied on about the splitting of the judgments. Clearly, this federal program has the ability to issue multiple judgments, ordering, I mean, I get paid interim attorney's fees all the time. But attorney's fees are a different matter. It's not the same as the ultimate compensation judgment. At least, only in one sense, Your Honor. And this was the argument they made in AVERA, if you recall. There was no election under subsection 21. They said, well, you can't enter an order for the payment of anything, because there's not been an election under subsection 21. Well, we've made the election under subsection 21. So, that procedural hurdle, or whatever, technicality is out of the way, this court, and so just as this court could order the payment of interim attorney's fees, which it said it could in AVERA, it declined to do so because of the factual basis in AVERA. They said, you're just waiting for this appeal decision to come in, and we don't think that's a long enough wait to grant your attorney's fees now. But AVERA, this court made clear that you could absolutely enter, could have entered those. It said so in AVERA. I don't see any difference between that and this, after the rule, the subsection 21 election has been filed, which it has been here. So, you would contemplate that this court would enter an order directing who, the Secretary of the Treasury, to release funds? Yeah. Just like we don't, I mean, normally, our judgments, absent a mandamus, our judgments are directed to the lower court, not off to some agent of the government. That's fine, Your Honor. I don't see, I mean, I did not anticipate, and I am unaware, I mean, it does not, and frankly, it doesn't make sense to me, but I have looked into it, why you can't order judge damage to pay, for instance, the amount that the annuity is designed to pay for her care items. Well, we'll look into it. And I just want to clear up on that issue, and I'll be done. The government says that, well, things have to be recalculated. Well, the pain and suffering doesn't have to be recalculated. The annuity doesn't have to be recalculated. In fact, the uncontested amounts for the lost wages doesn't have to be recalculated. There will be a point where there's more out-of-pocket expenses, but we get to file those anyway. It's not like it makes a difference here. Thank you. Thank you. Ms. Bell? Your Honor, I'll begin with the motion for partial summary judgment if the court doesn't have further questions on the merits. The relief that Petitioner seeks in that respect is inconsistent with the statutory scheme, which does contemplate a single judgment followed by the formal election of remedies and then the payment of compensation if a judgment under the vaccine program is elected. The relief proposed here is both inconsistent with that scheme and also would create myriad practical problems, not only those just contemplated with respect to remands to the lower courts, but also the recalculation of the award, which is a very real possibility were the government to prevail on this appeal, for instance, and the case be remanded for recalculation in light of the lost earnings provision. It would, at that point, per this court's decision in the Callister, be appropriate to recalculate other portions to adjust for the passage of time. Certain portions of the award that were then predictive will have documentation. The annuity would need to be reset for the appropriate time period. And it would create great administrative difficulties to be trying to fracture this compensation into multiple awards. But from our perspective, the statutory point is the key one, and what serves primarily to distinguish cases under the Vaccine Act from those under the FTCA, where we have occasionally seen the type of relief that Petitioner is seeking here. But there's simply no basis for that. In the courts, you mean where there's an issue pending on appeal in the Federal Tort Claims Act, the appellate court has ordered the payment of a partial judgment? I believe those are the cases. Without a remand? I would have to confirm the specifics of the procedural elements. But in the case of the petitioner cited in his motion, Dempsey and Barnes, there was a partial judgment paid before the completion of the remaining issues on appeal. But the FTCA, again, is wholly distinct from the Vaccine Act in the relevant respects, chiefly with regard to the election of remedies required here. I mean, Congress expressly contemplated that compensation would only be available either under the vaccine program or through traditional court remedies. And by allowing a petitioner to sort of fracture the proceedings, continue pursuing an appeal with respect to part of the issues while receiving compensation on the other, threatens great confusion and potentially to undermine that selection that Congress contemplated. And I don't think that the type of stipulation that Judge O'Malley suggested would suffice to resolve all these issues, although it certainly would be preferable to the grant of relief. Absent such a stipulation, it would not resolve the various issues, the need for recalculation, the question about remand, nor would it be wholly consistent with the statutory scheme. Thank you. We thank both counsels. The case is submitted. We will also, the motion will be submitted as well.